## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

ANITA SMITH,                                        Case No. 6:8-bk-1035-ABB
                                                    Chapter 7
      Debtor.

_____/

## ORDER

This matter comes before the Court on the Motion for Sanctions (Doc. No. 20) filed by the Debtor Anita Smith ("Debtor") pursuant to 11 U.S.C. Sections 524(a) and 105(a) seeking the imposition of sanctions against Bank of America, N.A. for violations of the discharge injunction.[1]  An evidentiary hearing was held on March 12, 2012 at which the Debtor and her counsel appeared.  Bank of America did not respond to the Motion or appear at the hearing.  The Motion is due to be granted for the reasons set forth herein.  The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence and being otherwise fully advised in the premises.

## FINDINGS OF FACT

The Debtor filed the above-captioned Chapter 7 bankruptcy case on February 15, 2008 ("Petition Date").  Countrywide Home Lending held a note and a first-priority mortgage encumbering the Debtor's homestead located at 2502 Bethaway Ave., Orlando, Florida (the "Property") on the Petition Date.  The Debtor listed Countrywide Home Lending as a secured creditor in Schedule D with a claim in the amount of $185,500.00.  Countrywide Bank held a note and second-priority mortgage on the Property.

---

[1] The Debtor cites to 11 U.S.C. Section 362 in her Motion asserting Bank of America violated the automatic stay of 11 U.S.C. Section 362(a).  The event chronology reflects no stay violation occurred and any relief sought by the Debtor pursuant to Section 362 is due to be denied.

Countrywide Bank was listed on Schedule D with a claim of $74,529.00 secured by the Property. The Petition discloses a foreclosure by Countrywide Home Lending. Debtor's Statement of Intention states the Property will be surrendered.

Notice of the Debtor's bankruptcy case was issued by the Court to Countrywide Home Lending and Countrywide Bank (collectively, "Countrywide") on February 22, 2008 (Doc. No. 9). The Notice advised Countrywide of the existence of the automatic stay of 11 U.S.C. Section 362(a). The Chapter 7 Trustee conducted the Debtor's Section 341 meeting of creditors and declared this case a no asset case on March 21, 2008.

Countrywide did not seek relief from the automatic stay or otherwise make an appearance in the Debtor's case.

The Debtor received a discharge pursuant to 11 U.S.C. Section 727 on June 6, 2008 (Doc. No. 13) ("Discharge of Debtor"), and her case was closed the same day. The Discharge of Debtor discharged the Debtor's debt on the Countrywide notes ("the Countrywide debt").

The discharge injunction immediately arose upon entry of the Discharge of Debtor enjoining any and all acts to collect a discharged debt. The Discharge of Debtor advised parties of the discharge injunction in large bold-face underlined type:

**"Collection of Discharged Debts Prohibited"**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take other action to collect a discharged debt from the debtors. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

(Doc. No. 13). The Court mailed the Discharge of Debtor to Countrywide on June 8, 2008 (Doc. No. 16).

2

Bank of America succeeded Countrywide as holder of the mortgages encumbering the Property and obtained a foreclosure judgment on the Property.

The Debtor received several phone calls from Bank of America agents regarding collection of the Countrywide debt after her discharge. Debtor informed the callers of her discharge. The calls did not stop.

Debtor's counsel responded to the collection calls by sending two letters informing Bank of America of Debtor's discharge and demanding cessation of all collection attempts. He sent both letters via fax and U.S. mail.

The first cease and desist letter was sent on June 24, 2010. Debtor's counsel attached a copy of Debtor's Schedule D and the Discharge of Debtor to the first cease and desist letter (Doc. No. 20, Exhibits A). Bank of America's collection calls to Debtor did not stop. She was called at least fifty times after the first cease and desist letter was sent.

The second cease and desist letter was sent to Bank of America on November 16, 2011 (Doc. No. 20, Exhibit B). This second letter informed Bank of America that Debtor "is 79 years old, in deteriorating health, and has been hospitalized recently. The stress you are placing her under by the constant phone calls to collect a discharged debt is adding to her health problems." (Doc. No. 20, Exhibit B).

Debtor called Bank of America twice, in November and December 2011, to request Bank of America discontinue its collection calls.

Calls from Bank of America to the Debtor continued in spite of the efforts of Debtor and her counsel. Bank of America telephoned the Debtor on at least forty-nine separate occasions between November 16, 2011 and December 6, 2011. The Debtor

received as many as seven calls per day from Bank of America during this time period. The calls to the Debtor continued until Debtor's counsel filed a Motion for Sanctions.

*Motion for Sanctions*

Debtor's counsel filed a Motion to Reopen Debtor's case on January 20, 2012 (Doc. No. 17). The Court issued an Order reopening the case on January 31, 2012 (Doc No. 18). Debtor's counsel filed a Motion for Sanctions against Bank of America on February 7, 2012 (Doc. No. 20) alleging Bank of America has attempted to collect from Debtor on the discharged Countrywide debt. Bank of America was served with these motions and the order reopening the case. An evidentiary hearing on the sanctions motions was scheduled and notice of the hearing was served by the Court on all parties. (Doc. Nos. 21, 22.)

The evidentiary hearing was held on March 12, 2012. Bank of America did not appear. Debtor established actual damages of $10,000.00 and attorney's fees of $1,500.00 arising out of Bank of America's numerous willful violations of the discharge injunction.

Bank of America received notice of the Debtor's discharge through communications from the Court, Debtor, and Debtor's counsel. Bank of America knew the Countrywide debt had been discharged and the statutory discharge injunction arose on June 6, 2008. Bank of America's telephone calls to the Debtor constitute at least ninety-nine attempts by Bank of America to collect a discharged debt from the Debtor. Each telephone call constitutes a violation of the Debtor's discharge injunction. Bank of America intended its actions; it willfully violated the Debtor's discharge injunction.

Bank of America is in contempt of the Debtor's discharge injunction. The Discharge of Debtor constitutes an order of this Court necessary to effectuate the Debtor's fresh start. Bank of America's behavior was intentional, egregious, and extreme. It blatantly and willfully ignored the discharge injunction, despite having received multiple notices of the discharge and requests to discontinue its collection efforts. Bank of America acted in bad faith. Its repeated telephone calls to the Debtor were vexatious and oppressive. Bank of America committed ninety-nine separate willful violations of the Debtor's discharge injunction.

The Debtor has suffered actual damages as a result of Bank of America's willful violations of the discharge injunction. Her damages include significant aggravation, emotional distress, inconvenience, and attorneys' fees. She suffered and incurred these damages as a direct result of Bank of America's actions.

The Debtor's significant aggravation, emotional distress, and inconvenience are readily apparent and do not require the presentation of medical evidence. Bank of America's willful, intentional, and repeated violations of the discharge injunction would ordinarily be expected to cause significant aggravation, emotional distress, and inconvenience. The Debtor is entitled to actual damages in the amount of $10,000.00 for significant aggravation, emotional distress, and inconvenience.

The Debtor incurred attorneys' fees and costs as actual damages resulting from Bank of America's actions. K. Hunter Goff performed services for the Debtor. He expended five hours of attorney time. A total fee award of $1,500.00 for counsel's services is reasonable based upon the work performed and results achieved.

The Debtor is entitled to an award of actual damages of $11,500.00 pursuant to the Court's statutory and inherent contempt powers.

## CONCLUSIONS OF LAW

The discharge injunction of 11 U.S.C. Section 524(a) automatically and immediately arose upon entry of the Debtor's discharge enjoining:

> . . . the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).  Section 524 "embodies the 'fresh start' concept of the bankruptcy code." Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996).

Bankruptcy Courts are empowered to award debtors actual damages for violations of the Section 524 discharge injunction pursuant to their statutory contempt powers deriving from 11 U.S.C. Section 105. Id. at 1389.  Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

A creditor may be held liable for contempt pursuant to Section 105(a) for willfully violating the permanent injunction of 11 U.S.C. Section 524.  In re Hardy, 97 F.3d at 1390.  Conduct is willful if the creditor: "1) knew that the discharge injunction was invoked and 2) intended the actions which violated the discharge injunction." Id. (applying the Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996), test to Section 524 discharge injunction violations).

6

The subjective beliefs or intent of the creditor are irrelevant. In re Hardy, 97 F.3d at 1390; In re Jove, 92 F.3d at 1555. Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test. In re Hardy, 97 F.3d at 1390; In re Jove, 92 F.3d at 1555-56.

Bankruptcy courts, in addition to their statutory contempt powers, have inherent contempt powers to sanction conduct "which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). Conduct abusive of the judicial process includes "bad faith conduct" and "willful disobedience of a court order." Id. at 45-46. Bad faith conduct includes "hampering enforcement of a court order," and vexatious, wanton or oppressive conduct. Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted); Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995).

Bank of America's predecessor had notice of the Debtor's bankruptcy case from the onset of the case and received notice of the Debtor's discharge through communications from the Court, Debtor, and Debtor's counsel. Bank of America knew when it began its collection calls to Debtor that the Countrywide debt had been discharged pursuant to 11 U.S.C. Section 727 and the statutory discharge injunction arose on June 6, 2008 pursuant to 11 U.S.C. Section 524(a). Bank of America's post-discharge communications to the Debtor regarding alleged mortgage arrearages constitute acts to collect or recover a discharged debt as a personal liability of the Debtor. Each telephone call constitutes a violation of the Debtor's discharge injunction.

Bank of America's actions constitute willful and intentional violations of the Debtor's discharge injunction. In re Hardy, 97 F.3d at 1390; In re Jove, 92 F.3d at 1555. Bank of America knew the discharge was entered and intended its actions which violated

the discharge injunction. It did not discontinue its collection efforts when it was asked to do so by Debtor and her counsel. It is in contempt of Court for its continuous and repeated failures to honor the discharge injunction of 11 U.S.C. Section 524(a). 11 U.S.C. §§ 524(a), 105(a); In re Hardy, 97 F.3d at 1390; In re Jove, 92 F.3d at 1555. Bank of America committed ninety-nine separate willful violations of the discharge injunction.

Bank of America's repeated failures to honor the discharge injunction were intentional, egregious, and extreme. It acted in bad faith. Its conduct was vexatious, wanton, and oppressive. The Discharge of Debtor constitutes an order of this Court essential to the Debtor's fresh start. Bank of America willfully disobeyed the discharge injunction.

The Debtor has suffered actual damages as a direct result of Bank of America's willful actions. Bank of America caused her to suffer significant aggravation, emotional distress, and inconvenience on each of the ninety-nine separate occasions it called her post-discharge. It caused her to incur attorney's fees.

The Debtor is entitled to an award of actual damages pursuant to 11 U.S.C. Section 105(a) and the Court's inherent powers. Chambers, 501 U.S. at 44-45; Barnes v. Dalton, 158 F.3d at 1214; In re Hardy, 97 F.3d at 1389; In re Mroz, 65 F.3d at 1575.

Emotional distress constitutes actual damages. In re Nibbelink, 403 B.R. 113, 120-21 (Bankr. M.D. Fla. 2009). Emotional distress is expected to occur where the conduct is egregious or extreme. Id. at 120. Significant emotional distress is readily apparent where the conduct is egregious and corroborating medical evidence is not required. Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1150 (9th Cir. 2004). Entitlement to emotional distress damages exists "even in the absence of

an egregious violation, if the individual in fact suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm." Id. at 1151.

The Debtor's emotional distress is readily apparent due to Bank of America's intentional, egregious, and extreme conduct. She is not required to present corroborating medical evidence. In re Nibbelink, 403 B.R. at 120; In re Dawson, 390 F.3d at 1150-51. The Debtor is entitled to actual damages for significant emotional distress, aggravation, and inconvenience in the amount of $10,000.00.

Attorneys' fees and costs constitute actual damages that may be awarded in a discharge violation proceeding pursuant to the reasonableness criteria of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-718 (5th Cir. 1974). In re Nibbelink, 403 B.R. at 122. The Debtor has incurred attorney's fees for services provided by Goff. He expended five hours of attorney time. A total fee award of $1,500.00 is reasonable after consideration of the Johnson factors.[2]  Debtor's counsel's fee is limited to $1,500.00; counsel is not entitled to receive a portion of any of the other damages awarded.

The Debtor is entitled to an award of actual damages of $11,500.00 pursuant to the Court's statutory and inherent contempt powers.

Accordingly, it is

---

[2] The reasonableness of attorney's fees and costs is determined through an examination of the criteria enunciated by the Fifth Circuit Court of Appeals in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. Johnson, 488 F.2d at 714.

**ORDERED, ADJUDGED and DECREED** that Bank of America violated the Debtor's discharge injunction of 11 U.S.C. Section 524(a) and an award of actual damages of $11,500.00 is appropriate pursuant to 11 U.S.C. Section 105(a) and the Court's inherent powers; and it is further

**ORDERED, ADJUDGED and DECREED** that Bank of America is enjoined pursuant to 11 U.S.C. Sections 524(a) and 105(a) from taking any further collection action against the Debtor; and it is further

**ORDERED, ADJUDGED and DECREED** that Judgment shall be entered for Debtor Anita Smith and against Bank of America in the amount of $11,500.00, plus interest at the applicable federal judgment rate until paid; and it is further

**ORDERED, ADJUDGED and DECREED** that the Judgment shall be paid to Anita Smith, c/o K. Hunter Goff, counsel for the Debtor, whose address is Law Offices of K. Hunter Goff, P.A., 227 Citrus Tower Blvd., Clermont, FL 34711.

A separate judgment consistent with these findings and rulings shall be entered contemporaneously.

Dated the 21st day of March, 2012.

**ARTHUR B. BRISKMAN**
United States Bankruptcy Judge